United States District Court
Southern District of Texas
**ENTERED**
April 22, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHARLES CONN, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:14-CV-298 |
| | § | |
| C.R. BARD, INC, *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court is a Motion for Summary Judgment filed by Defendant C.R. Bard, Inc.,
and Bard Peripheral Vascular, Inc., (hereinafter "Bard") (Doc. No. 66). The Plaintiff Charles Conn
("Conn") responded (Doc. No. 95), and Bard replied thereto (Doc. No. 109). Having considered
the briefings and applicable law, the Court hereby **GRANTS** in part and **DENIES** in part Bard's
Motion insofar as it is based upon the statute of limitations.

### I.    Background

This is a products liability action involving the G2 Filter (the "Filter"), a medical device
manufactured and distributed by Bard. On August 23, 2006, 19-year-old Conn saw his
gastroenterologist for severe Crohn's disease symptoms. (Doc. No. 66-2, Ex. A at
CONCC_AUSG_MDR0040–41). His doctor referred him to the emergency room on suspicion
that he had a thromboembolic disease, or, in layman's terms, problems related to blood clots. (*Id.*).
At the South Austin Hospital emergency room, he not only presented with Crohn's-related
gastrointestinal symptoms, but also with shortness of breath, high fever, worsening chest pain, and
a history of weight loss. (*Id.* at CONCC_CSDSH_MDR00203). His doctors discovered a large
free-floating caval thrombus—a blood clot in his inferior vena cava, and a possible pulmonary

embolism. (*Id.* at CONCC_CSDSH_MDR00255). Several different doctors evaluated Conn's condition and recommended the Filter placement because he could not take anticoagulants, which are in most cases an accepted alternative treatment for blood clots and possible pulmonary embolisms, because they were contraindicated due to his severe Crohn's disease. (*See id.* at CONCC_CSDSH_MDR00197; MDR00205; MDR00208; MDR00255). On August 24, 2006, Dr. Gunlock performed a "suprarenal" filter placement due to the "large free-floating caval thrombus" which "precluded infrarenal cava filter placement." (*Id.* at CONCC_CSDSH_MDR00255). According to Dr. Gunlock and various physicians, the filter was intended to be removable. (*Id.*; *see also* MDR00200).

On August 28, 2006, just four days after this procedure, Conn was re-admitted to the emergency room at South Austin Hospital because he felt sharp pain in the lower right quadrant of his abdomen and had a dull ache in his swollen right leg. (*Id.* at CONCC_CSDSH_MDR00014). After a CT scan, doctors noted that the clot had moved and was extending through and above the recently-placed filter: "Before he only had mild extension into the right iliac with no occlusion and he now has complete occlusion of both iliac veins." (*Id.* at CONCC_CSDSH_MDR00015). Since the threat of a future pulmonary embolism was high, the doctors decided to go ahead and put him on an anticoagulant, despite his Crohn's disease. (*Id.*; *see also* CONCC_CSDSH_MDR00010).

On October 31, 2007, Conn was again referred to the emergency room for Crohn's-related symptoms as well as a check up on his Filter placement. (*Id.* at CONNC_STDMC_MDR00667). His treating physician referred him to a radiologist, and after imaging, the radiologist noted in Conn's medical record:

> The filter is positioned considerably obliquely and appears to be well above the renal vein level. As that filter appears to be a removable type [sic]. Further evaluation of the filter position is recommended. Consider venocavogram and possible filter removal . . . .

Addendum: Prior filter deployment images obtained from 8/24/06 demonstrate that the filter has migrated slightly into the tilted position but that it is at the approximate same axial level. *View of the recent CT images suggests that the struts are well implanted into the wall of the vena cava and left renal vein, and the positioning of the struts suggests that the filter is functional . . . At this point this filter is probably not retrievable based on the time that it has been implanted and the angulation of the tip.*

(*Id.* at CONNC_STDMC_MDR00747) (emphasis added). The referring physician conferred with

the radiologist and summarized:

There was some question about the placement of the filter. Apparently it had rotated in the IVC. I reviewed this with the radiologist who after reevaluating felt that the *position was adequate, it was stable and would not embolize from this position and afforded adequate protection for thromboembolic clots in the present orientation.*

(*Id.* at CONNC_STDMC_MDR00667) (emphasis added).

In 2007 and again in 2009, Conn underwent colon and rectal surgery to mitigate the problems he was having due to his Crohn's disease. (Doc. No. 95 at 10 & Doc. No. 95, Ex. 48). On September 19, 2012, Conn again presented to the emergency department—this time at Memorial Hermann Hospital in Houston. (*Id.*, Ex. 7). He complained of abdominal pain, nausea, vomiting, and loss of appetite, and was admitted. (*Id.*, Ex. 3). During the hospital admission, Conn learned there was "a piece of the filter that had broken off and gone to my heart." (*Id.*). He followed up on October 4, 2012, when his physician described the situation as an "IVC filter barb dislodgment to heart." (Doc. No. 66-2, Ex. A at CONNC_UTP_MDR00003).

On January 28, 2017, Conn underwent a filter retrieval attempt "due to severe filter angulation," during which he complained of pain when the physician tried to dislodge the filter, despite being under sedation. (Doc. No. 95, Ex. 8). The attempt was unsuccessful. (*Id.*). On July 7, 2017, Conn underwent a second, more successful retrieval attempt at Stanford University,

performed by Dr. William Kuo. The physician noted: "Today, he is aware of an old filter fragment that has migrated into his heart . . . . He reports intermittent episodes of chest pain/tightness which he has attributed to his filter in the past." Dr. Kuo performed a partially "successful complex retrieval of a suprarenal Bard G2 IVC filter" and a "successful complex retrieval of a fractured arm fragment," but "an old fractured arm [of the Filter] fragment is seen over the right heart unchanged in position compared to prior radiographs." (Doc. No. 66-2, Ex. A at CONNC_SHC_MDR00047). In other words, a piece of the Filter remains lodged in Conn's heart.

Prior to both filter retrieval attempts, Conn sued Bard on February 7, 2014 alleging negligence, failure to warn, design defects, manufacturing defect, breach of implied warranty of merchantability, negligent representation, and loss of consortium on behalf of Plaintiff Alyssa Conn, his wife. He also sought punitive damages.

Bard filed a Motion for Summary Judgment (Doc. No. 66). Its first and primary reason for seeking a judgment before trial is that all of Conn's claims fail "because they are time-barred." (*Id.* at 10). That is the claim addressed in the instant order. It also argued that (1) Conn's claims fail for lack of causation, because Conn has not met his burden of proving with competent expert testimony that any alleged defect in the Filter substantially caused his alleged injuries; (2) Conn has no compensable injury under Texas law; and (3) Conn's causes of action each fail for independent reasons.[1] (The Court will address these additional claims in a separate order). In

---

[1] Specifically:

    A. Plaintiff's manufacturing defect claims (Counts I and IV) fail as a matter of law because there is simply no evidence that the Filter did not meet manufacturing specifications, and Plaintiff have no evidence to the contrary;

    B. Plaintiff's failure to warn claims (Counts I and II) fail as a matter of law because Bard expressly warned Plaintiff's implanting physician, the learned intermediary, of the exact risks and potential complications complained of by Plaintiff, including fracture, tilt, occlusion and migration. Further, Plaintiff cannot show that a different or additional warning would have had any impact on his implanting physician's decision to prescribe Plaintiff with the Filter.

Conn's response to the Motion, he attempts to withdraw his manufacturing defect claims (Counts I and IV), negligent misrepresentation claim (Count VI), and breach of warranty claim (Count V). (Doc. No. 95 at 24). The Court hereby dismisses those claims with prejudice. It also grants in part and denies in part the Motion for Summary Judgment with respect to the argument that Conn's claims are time-barred.

With regard to the claims discussed here, the actual pleadings for relief provide the Court with little guidance as to what damages are really being claimed. The Complaint's descriptions of what actual injuries Conn is claiming damages for are quite short of specifics. This lack of specificity would be troubling in any case, but it is especially troubling here given Conn's extensive history of medical problems that are unrelated to any product made or sold by the Bard.

Finally, for purposes of its statute of limitations defense, Bard has moved on two distinct episodes. As explained further below, Bard has essentially separated Conn's injuries into (1) those "arising out of the August 28, 2006 clot," and (2) those arising from the Filter having "tilted and migrated." (Doc. No. 109 at 8; Doc. No. 66 at 19). Those two distinct time frames are what the Court will address.

---

C. Plaintiff's design defect claims (Counts I and III) fail as a matter of law because comment k to § 402A of the Restatement (Second) of Torts bars such claims, and they lack any evidentiary support proving defect and causation;

D. Plaintiff's claim for negligent misrepresentation (Counts VI) fails as a matter of law because there is no evidence of a misrepresentation nor reliance on same;

E. Plaintiff's claim for breach of implied warranty (Counts V) fails as a matter of law because there is no privity between the parties and there is no evidence that Bard made an express warranty to Plaintiff;

F. Plaintiff's negligence claim (Count I), to the extent it is distinct from Plaintiff's manufacturing, design, and warnings claims, fails for lack of evidence;

G. Plaintiff's claim for punitive damages fails because all his other claims fail, and Plaintiff has not shown by clear and convincing evidence that Bard acted with "malice, fraud, or oppression."

(Doc. No. 66 at 11–12).

## II.    Legal Precedent

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the Court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248.

## III.    Analysis

Under Texas law, the statute of limitations for personal injury is two years. Tex. Civ. Prac. & Rem. Code § 16.003(a). This period may be tolled by application of the discovery rule. *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 65 (Tex. 2011). The discovery rule tolls accrual "until a plaintiff knows or, through the exercise of reasonable care and diligence, should have known of the wrongful act and resulting injury." *Childs v. Haussecker*, 974 S.W.2d 31, 36 (Tex. 1998). When the discovery rule applies, accrual is delayed until the plaintiff discovers or reasonably could have

discovered her injury, not when she discovers the wrongdoing by the defendant. *See Timberlake v. A.H. Robins Co., Inc.*, 727 F.2d 1365 (5th Cir. 1984) ("[No Texas authority applying the discovery rule] implies that the statutory period should be tolled until the plaintiff learns that the defendant's conduct may have been wrongful."); *see also Coody v. A.H. Robins Co., Inc.*, 696 S.W.2d 154, 156 (Tex. App.—San Antonio 1985, writ dism'd by agr.) ("The discovery rule speaks only of discovery of the injury.").

The discovery rule applies only to cases in which "the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable." *Marshall*, 342 S.W. 2d at 65–66. The Fifth Circuit, applying Texas law, has held that the discovery rule applies to injuries resulting from implanted devices. *See e.g.*, *Brandau v. Howmedica Osteonics Corp.*, 439 F.App'x 317, 322 (5th Cir. 2011) (knee replacement device); *Porterfield v. Ethicon, Inc.*, 183 F.3d 464, 467 (5th Cir. 1999) (surgically implanted mesh).

Bard argues that there is no issue of material fact as to whether Plaintiff's claims were filed after the expiration of the applicable limitations period and it should be granted summary judgment on all claims as a matter of law. (Doc. No. 66 at 17). Citing to various medical records, Bard contends (1) Conn received the Filter on August 24, 2006; (2) by August 28, 2006, Conn had an occlusion of the Filter; and (3) on October 31, 2007, Conn "became aware of other potential complications with the Filter [when his] doctors learned the Filter had tilted and migrated." (*Id.*).[2] In connection with the 2007 complications, Bard also argues that Conn "was experiencing chest pain, an injury he attributes to the filter, as early as 2007." (*Id.*).

As stated above, Bard splits the possible damages into two categories: First, Bard contends that "to the extent Conn is complaining that the Filter caused his extended blood clot" (the

---

[2] Bard in fact points to no evidence that Conn "became aware" of any complications. It points only to various doctor's reports.

occlusion), for which he sought re-hospitalization on August 28, 2006, the accrual date for those claims began on August 28, 2006 because Conn "was well-aware of his claim." (Doc. No. 66 at 19). Second, as for any injuries complained about regarding the Filter migration, alleged Filter defect, or the fact that part of the Filter has been irretrievable, Bard argues the accrual period must have started October 31, 2007 because under Texas law, "a diligent individual would have inquired as to why the device had tilted and migrated." Considering that Conn waited until February 2014 to sue, and the two-year limitations period would have expired in either August 2008 for the clot-related injuries, or October 2009 for his other filter-related injuries, Bard argues Conn's claims are time-barred. (*Id.*).

In response, Conn generally contests the accrual date(s) and argues that the statute of limitations did not start to run until September 19, 2012, when a physician advised him that the filter was cause for concern. (Doc. No. 95 at 22). Conn's arguments are twofold. He argues: (1) no physician conveyed that there were any issues with the Filter until 2012; and (2) prior to 2012, he did not attribute any pain he experienced to his Filter, because he had chronic abdominal pain and other associated pains as a result of his Crohn's disease. (*Id.* at 20–22). He first cites to his deposition testimony, during which he states the Filter was not called to his attention until 2012 when he was having abdominal pain he attributed to his ostomy surgery: "[O]ne of the CT scans happened to catch the upper part where my filter was located and so they saw it there and they said that that didn't look right or something. . . they said it was tilted and later on I learned that a piece had broken off and traveled to my heart." (Doc. No. 95, Ex. 47, Conn 3/16/2015 dep. at 51:17-52:9). Conn also cites to his Declaration, where he swore:

> I was not told that there was any problem with the filter or that it was not performing as intended until September 2012. Although I saw many doctors over the years for Crohn's Disease and other issues and had numerous CTs, *no doctor expressed any concerns to me about the IVC filter having problems or causing injury until I*

*reported to the emergency room . . . in September 2012 . . .* Afterwards, I learned that there were other problems with the filter that could be contributing or causing me to have abdominal pain and chest pain *that I had previously attributed to my severe Crohn's Disease and related issues.*

(Doc. No. 95, Ex. 3) (emphasis added). Finally, he refers the Court to his medical records to show that prior to September 2012, his treating physicians commented that the Filter was "well implanted," and "functional," but no doctor considered the Filter to be defective. There is no evidence in the records that any doctor advised Conn of any issues whatsoever. (Doc. No. 95 at 21).

Conn's reply does not address the argument raised by Bard that any claim that the Filter caused his August 28, 2006 blood clot (or blood clot extension/ occlusion of is iliac veins) was barred as of October 28, 2008 because the hospitalization for that clot itself triggered the statute of limitations. As this Court previously mentioned, Conn's pleadings do not clearly state whether he seeks damages for that injury at all. Nevertheless, the Court will address each set of possible damages separately due to the construction of Bard's arguments.

A.     Conn is time-barred from asserting a cause of action concerning blood clots including his August 28, 2006 blood clot incident

First, the Court finds that to the extent Conn is complaining of injuries based on the notion that the Filter caused the August 28, 2006 clot or any other blood clotting problem, those claims are time-barred. The summary judgment evidence, which includes the applicable medical records, states that shortly after his August 24, 2006 Filter placement, Conn developed "subjective right leg swelling and numbness," "sharp abdominal pains which were atypical for his Crohn's," and after evaluation "was found to have extension of his clot into his bilateral iliac veins . . . ." (Doc. No. 66-2, Ex. A at CONNC_CSDSH_MDR00008). Therefore, Bard contends that this

hospitalization triggered the statute of limitations for any claims arising from the Filter's alleged causing of this clot. (Doc. No. 66 at 19).

Bard has presented summary judgment evidence to suggest that Conn was aware of occlusion and clot risks before he underwent the IVC Filter procedure. Conn signed a consent form prior to the Filter placement, whereby he initialed that he realizes "the following risks and hazards may occur in connection with . . . an interventional cardiology procedure: . . . (4) Aggravation of the conditions [blood clots] that necessitated the procedure . . . (1) Migration of stent through vessels or blood clots within stent." (Doc. No. 66-2, Ex. A at CONNC_CSDSH_MDR00378). Since Conn was hospitalized just four days after his procedure for what can clearly be described as an "aggravation of the conditions that necessitated the procedure," the Court finds that a diligent person would have known or at least would have inquired as to why he was suffering from this injury.

Moreover, Bard has presented deposition testimony from Dr. Gunlock, who performed the procedure, to show that Conn was informed of the risk of potential clotting and occlusion caused by the IVC Filter. After first testifying that IVC occlusion was "the most common" known complication to IVC Filters at the time, Dr. Gunlock stated that he would review and weigh the risks with all patients and answered affirmatively to the following:

> A: At the time that you placed the filter. . . you were aware of the risks that we discussed: migration, fracture, *occlusion*, and some of the other risks; is that correct?
> Q: Yes
> A: And you discussed those with Mr. Conn prior to—based on what you would ordinarily do with a patient, it's your feeling you discussed those with Mr. Conn?
> A: Yes.

(Doc. No. 66, Ex. B, Gunlock Dep. Tr. At 41:1–12; 56:12–22). Conn did not refute this contention in his Response, and the Court finds that Conn was on notice of his duty to inquire as of August

28, 2006. Therefore, the Court grants summary judgment with respect to the argument that any claims that the Filter caused Conn any problems relating to clotting are barred by the statute of limitations.

B.     Conn is not time-barred from pursuing other claims arising from the Filter's tilt, migration, or defect

As previously explained, Bard argues that Conn is time-barred from pursuing claims that might arise from the Filter tilting or migrating. Bard contends the statute of limitations started to run on October 31, 2007 because at that time (1) Conn "became aware" of complications with his filter;[3] and (2) he was "experiencing chest pain, an injury he attributes to the filter." (Doc. No. 66 at 7). Bard therefore argues that "a diligent individual would have inquired as to why the device had tilted and migrated." (Doc. No. 66 at 19). Bard cites to Conn's medical records and his deposition testimony.

Initially, the Court notes that Bard's own summary judgment evidence reveals a dispute of fact. Bard heavily relies on the argument that Conn should have been on notice of some injury that required investigation into the Filter in 2007 because he was suffering from chest pain, "an injury he attributes to his filter, as early as 2007." (Doc. No. 66 at 19; Doc. No. 109 at 9). Bard

---

[3] As an initial matter, Bard cites to several cases to support the proposition that when a *plaintiff learns* of a filter migration, tilt, perforation, or other movement, the plaintiff should inquire as to why, triggering the statute of limitations. (Doc. No. 66 at 19 and n.5). Here, however, Bard has referred the Court to no summary judgment evidence to show that Conn *himself* ever knew his Filter had migrated, perforated, shifted, or was in any way defective until 2012. Bard refers the Court only to medical records where various doctors in October 2007 noted the filter may have tilted. For example, Bard cites to a medical record where Conn's physician noted:

> There was some question about the placement of the filter. Apparently it had rotated in the IVC. I reviewed this with the radiologist who after reevaluating felt that the position was adequate, it was stable and would not embolize from this position and afforded adequate protection for thromboembolic clots in the present orientation.

(Doc. No. 66-2, Ex. A at CONNC_STDMC_MDR00667). Bard has provided no evidence that this information was shared with Conn.

doubles down on that assertion by citing to Conn's deposition for the proposition that "Plaintiff *testified under oath* that he was already experiencing chest pain, an injury he attributes to his Filter, *at that time*," and cites to Conn's deposition. (Doc. No. 109 at 9) (emphasis in the original). Conn's testimony to which this Court was cited, however, does not definitively make such a representation. The deposition section Bard cites for this conclusion is as follows:

> Q: You mentioned earlier in the deposition that you had chest pain. When was the first time you had any chest pain?
> A: It was – the *very first time I can remember chest pain is prior to the implantation of the filter*.
> Q: Okay. Let's—let's stop. When was the first time you recall having chest pain after the filter was implanted?
> A: It's the sort of thing that comes and goes intermittently and rather unexpectedly, so maybe a month or several months after.
> Q: So you—you—your testimony is that after the filter was implanted in 2006 you had chest pain? I mean, we've been through all those years and you said you were having no symptoms or problems with the filter.
> A: I thought you were referring to after the ostomy surgery in 2009.
> Q: Fair, After the 2009 ostomy surgery when was the first time you recall having chest pain?
> A: It's the kind of thing that I don't know if—I just ignored it because I was just so used to feeling like crap from the Crohn's disease. *With Crohn's I've been dealing with pain a lot, so it's kind of a new normal for me to have some sort of pain somewhere.*
> Q: Since the surgery in 2009 has any doctor told you that your chest pain was related to the filter?
> A: No, *I don't think they could say what the pain was related to.*

(Doc. No. 109-6, Ex. E Conn 3/16/2015 dep. 57:13–58:26) (emphasis added). Contrary to Bard's assertions, the above-cited section is not definitive. There was clearly some early confusion as to the timeline about which Conn was asked. Conn also states that he had chest pain *before* the Filter was ever implanted.

The testimony also demonstrates that Conn was not told the pain he experienced was related to the Filter, and that he had dealt with various kinds of "abdominal" pain throughout this time period due his Crohn's symptoms. Accordingly, a close examination of the summary

judgment evidence Bard has presented does not necessarily demonstrate the absence of a genuine issue of material fact. *Seagraves v. City of McKinney*, 45 S.W.3d 779, 782 (Tex. App.—Dallas 2001, no pet.) ("When a defendant moves for summary judgment on its affirmative defense, it must conclusively prove all the essential elements of its defense as a matter of law, leaving no issues of material fact.").

Even assuming that Bard's evidence can be viewed as clearly as Bard represents, the Court finds that Conn raised a genuine issue of material fact as to whether he knew or should have known of his injury (resulting from filter tilt, migration, or defect) as early as 2007. First, Conn presented evidence that raises a genuine issue of material fact as to whether his physicians' various notes in the medical records should have put him on notice to inquire into the Filter's position. Even if the physicians who noted that the Filter had shifted in 2007 conveyed this information to Conn, the information does not point firmly in one direction. The physicians' comments include: "apparently [the Filter] had rotated in the IVC" but its position "was adequate," and "was stable and would not embolize." (Doc. No. 66-2, Ex. A at CONNC_STDMC_MDR00667).[4] The comments that the Filter was "stable" and "afforded adequate protection," are not uncontroverted evidence that Conn should have inquired as to any injury resulting from the Filter migration. If anything, they create an issue of fact for the jury to resolve as to whether Conn should have been on notice to investigate.

Notably, the facts here are distinguishable from *In re Mirena IUD Prod. Liab. Litig.*, upon which Defendant relies. 29 F.Supp. 3d 345, 356 (S.D.N.Y. 2014) (applying Texas law). In that case, the court found that when the plaintiff learned a medical device had perforated *"and surgery was required to remove it, she had clearly suffered an injury from the device's perforation and migration*, which would have prompted a reasonably diligent individual to inquire into why [the

---

[4] *See supra* n.3

device] had perforated her uterus." *Id.* at 357 (emphasis added). Here, according to the medical records presented by Bard from 2007, no physician noted that the rotated filter required any further action from Conn; in fact, they insisted that it was stable and functional.

Second, Conn denies that his physicians ever told him there were any problems with his filter until 2012. In his declaration, he swore: "I was not told that there was any problem with the filter or that it was not performing as intended until September 2012 . . . During this admission, I was told that there was a piece of the filter that had broken off and gone to my heart. This is the first indication that I had that there was a problem or malfunction with the filter and that I had been injured." (Doc. No. 95, Ex. 3). Similarly, in his deposition, he explained that he learned the name of the Filter in 2012, because, "[i]t was brought up in 2012 when I figured out there was something wrong with it." (*Id.*, Ex. 47 Conn 3/16/2015 dep. 18:17–18). Thus, Conn has raised a genuine issue of material fact about what he knew, if anything, concerning the Filter's position before September 19, 2012.

Third, Conn has presented summary judgment evidence that raises a fact issue as to whether he knew or should have known his injury was attributable to the Filter because of his history of unrelated abdominal pain. He cited to his declaration, wherein he stated he had often credited various abdominal pain "to his severe Crohn's Disease," (Doc. No. 95 at 21) raising a fact issue as to whether he should have "exercised reasonable care and diligence" to investigate his injury. *Childs*, 974 S.W.2d at 36. Again, the facts in this case are markedly different from cases Bard relies upon, wherein plaintiffs were experiencing pain they attributed to the filter at the time. *See e.g., Henley v. C.R. Bard, Inc.*, No. 14-C-0059, 2019 WL 6529433, at *3 (E.D. Wis. Dec. 4, 2019) (Plaintiff experienced pain *since* placement of filter and was shortly thereafter told that

retrieval was impossible *due to* filter tilt). Conn has successfully met his burden of bringing forth controverting facts that demonstrate that there is a genuine dispute. *Celotex*, 477 U.S. at 321–25.[5]

## IV.    Conclusion

For the foregoing, the Court hereby **GRANTS IN PART** Bard's Motion for Summary Judgment (Doc. No. 66) as to any claims that the Filter caused any blood clot problems or any other related injuries from that time period because they are time-barred, and **DENIES IN PART** Bard's Motion for Summary Judgment insofar as it is based upon the argument that the statute of limitations bars any claims resulting from injury caused by any Filter tilt, migration, perforation, or defect as it was discussed in 2012.

The Court dismisses the following claims with prejudice: manufacturing defect (Counts I and IV), negligent misrepresentation (Count VI), and breach of warranty (Count V).

Regarding all other arguments put forth in the Motion for Summary Judgment, as well any *Daubert* motions, the Court hereby sets a hearing for May 4, 2021 at 10:00am, during which Conn and Bard should be prepared to argue any outstanding motions.

---

[5] Under similar facts, the Western District of Texas denied summary judgment:

> Bard has not shown the absence of a fact issue that [the plaintiff] knew or should have known that her filter issues were abnormal complications or the result of Bard's defective design; they have only raised the possibility that she should have known. It is for a jury to decide whether, given the limited information [the plaintiff] had regarding the shift and fracture, and the insistence from multiple treating physicians that there was no cause for concern, whether she should have known, with the exercise of reasonable diligence, that the issues she was having were caused by Bard's allegedly defective design.

*Espinoza v. C.R. Bard, Inc.*, SA19CA1104FBHJB, 2020 WL 6266013, at *4 (W.D. Tex. Sept. 9, 2020), report and recommendation adopted, CV SA-19-CA-1104-FB, 2020 WL 6265346 (W.D. Tex. Oct. 6, 2020). This Court concurs with that reasoning.

Signed at Houston, Texas, this 22nd day of April, 2021.

Andrew S. Hanen
United States District Judge