United States District Court
Southern District of Texas
**ENTERED**
June 08, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHARLES CONN, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:14-CV-298 |
| | § | |
| C.R. BARD, INC, *et al*, | § | |
| | § | |
| Defendants. | § | |

### ORDER

Pending before the Court is a Motion to Exclude or Limit Opinions and Testimony of Robert P. Allen, M.D. filed by Defendants C.R. Bard, Inc., and Bard Peripheral Vascular, Inc. (collectively, "Bard"). (Doc. No. 63). Plaintiff Charles Conn ("Conn") responded (Doc. No. 94), and Bard replied (Doc. No. 108). After considering the motion, response, record, and applicable law, the Court GRANTS IN PART and DENIES IN PART the motion.

### I. Background

This is a products liability action involving the G2 Filter (the "Filter"), a medical device manufactured and distributed by Bard. Conn was implanted with the Filter on August 24, 2006 and claims it "fractured and a strut migrated to the right ventricle causing [ ] significant injuries." (Doc. No. 1 at 23–24). Conn sued Bard alleging negligence, failure to warn, design defects, manufacturing defect, breach of implied warranty of merchantability, negligent representation, and loss of consortium on behalf of Plaintiff Alyssa Conn, his wife. He also sought punitive damages.

Conn has identified Dr. Robert Allen, an interventional radiologist, as a case specific expert witness. (Doc. No. 94 at 6). Dr. Allen is the Director of Interventional Radiology at Radiology Specialists of Denver, Chief of Interventional Radiology at Denver Health Medical Center, and a

Board-Certified practicing diagnostic and interventional radiologist of more than two decades. (*Id.*). Dr. Allen used to implant IVC filters regularly as part of his practice. (Doc. No. 117-38 at 2–3). Based on his concerns about the effectiveness of filters, his experience with IVC filters now consists of consulting with patients who have had IVC filters implanted that require removal and retrieving them. (*Id.*). Dr. Allen offers opinions about, among other things, an alleged failure of informed consent and failure to warn, the adequacy of the G2 filter instructions for use ("IFU"), the efficacy of the G2 filter, medical device complaints, and the failure of Conn's filter. (Doc. No. 63 at 7).

Bard asks the Court to exclude 15 "case specific" opinions and conclusions offered by Dr. Allen:

> • whether the IFU associated with the filter [sic] "inadequate for use by physicians in medical decision making and in informed consent of patients";
> • whether the IFU "provides inadequate warnings and information about the very serious risks of tilt, fracture, perforation, migration, and embolization associated with the G2 filter";
> • whether the IFU fails to provide "adequate recommendations for imaging follow-up and [] timeline for removal";
> • whether the IFU "failed to meet the reasonable expectations of physicians like Dr. Gunlock and [Dr. Allen], who implant or recommend implantation of IVC filters";
> • that Bard did not "adequately warn physicians . . . of important safety risks and specific device failure risks associated with its 'retrievable' G2 IVC filter";
> • whether Bard's alleged failure to warn of "safety risks and problems associated with the G2 filter . . . prevented Dr. Gunlock from making an informed decision as to whether to implant a G2 filter into [Plaintiff], and also prevented him from explaining the risks to [Plaintiff], and in turn prevented [Plaintiff] from providing Dr. Gunlock informed consent.";
> • that Bard "failed to notify" treating physicians and patients of "the much higher complication rates of fracture, embolization of fractured components, caval perforation, filter migration, and death associated with the G2 and Recovery filters in comparison to the original predicate device . . . and competitor filters";
> • that Bard "failed to accurately notify regarding the specific complication of perforation";
> • medical device complaints and underreporting;
> • that there is "no proven efficacy of any IVC filter including the G2 in reducing the risk of mortality;
> • that the G2 "is a filter with great risk but no proven benefit";

2

- design defects;
- that the "defective design of the G2 filter caused [Plaintiff]'s injuries, including tilt and apex embedment, multiple strut fractures, fragment embolization to the patient's heart, caval perforation into the retroperitoneum, liver, uncinate process of pancreas and direct impingement on the crossing right renal artery";
- that the "strut perforations and fractures associated with [Plaintiff]'s G2 filter were and are the result of the filter design itself"; and
- any and all opinions of Dr. Hurst, Dr. McMeeking, and Dr. Garcia, adopted by Dr. Allen, that the MDL excluded.

(Doc. No. 63 at 9–10). Conn opposes the motion. (Doc. No. 94). The Court will address each objection by category.

## II. Legal Standard

Under Rule 702, a qualified expert may testify on the basis of "scientific, technical, or other specialized knowledge" if it "will assist the trier of fact to understand the evidence," provided the testimony rests on "sufficient facts or data" and "reliable principles and methods," and "the witness has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(a)-(d). An expert may be qualified to testify based on his or her "knowledge, skill, experience, training, or education." *Id.*

The proponent of expert testimony must prove by a preponderance of the evidence that the testimony is reliable. *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). The Supreme Court has clarified in *Daubert* and *Kumho Tire* that it is the gatekeeping role of the Court to determine whether an expert's proffered testimony conforms with Rule 702. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). The Court is to "ensure the reliability and relevancy of expert testimony," *Kumho Tire*, 526 U.S. at 152, and is not required to "admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Id.* at 157 (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

## III. Discussion

### A. The IFU

Bard argues that Dr. Allen is not qualified to give testimony and offer opinions as to the sufficiency of the Filter's IFU. (Doc. No. 63 at 12). Bard contends that Dr. Allen has not established that he has the sufficient knowledge or experience to opine on the content requirements or adequacy of an IFU, because Dr. Allen has testified that he is not an expert in drafting IFUs. (Doc. No. 63 at 13–14).

Conn argues that Dr. Allen is the most reliable expert to offer expert opinions regarding the Filter's IFU. (Doc. No. 94 at 10). According to Conn, the learned intermediary doctrine requires him to prove that Bard failed to warn Conn's implanting physician. (Doc. No. 94 at 10). Therefore, Conn contends that because Dr. Allen has "extensive experience implanting and retrieving IVC filters," he is qualified to testify about the sufficiency of and warnings in the IFU. (*Id.*). Conn concedes that Dr. Allen is not offering opinions as a regulatory expert, but rather "from the perspective of the adequacy for use by physicians in medical decision making and the consent of the patient." (*Id.*).

#### 1. Risks

The Court finds that Dr. Allen can testify as to the risks associated with the use of the G2 filter. Dr. Allen has demonstrated experience in IVC filter implantation. (Doc. No. 117-38 at 2–3). Based upon that experience, he is qualified to testify about whether generally recognized medical risks associated with the procedure and device are in fact warned about in the IFU. *See Winebarger v. Boston Sci. Corp.*, 2:13-CV-28892, 2015 WL 1887222, at *15 (S.D.W. Va. Apr. 24, 2015) (holding practicing urogynecologist qualified to opine as to risks he perceives of surgical mesh product, and whether instructions conveyed those risks to physicians); *In re Yasmin & YAZ*

*(Drospirenone) Mktg., Sales Practices & Products Liab. Litig.*, 3:09-MD-02100-DRH, 2011 WL 6301625, at *11 (S.D. Ill. Dec. 16, 2011) ("doctors are fully qualified to opine on the medical facts and science regarding the risks and benefits of [drugs] ... and to compare that knowledge with what was provided in the text of labeling and warnings for FDA approved drugs."). He can also testify as to what is or is not in the IFU, to the extent that it is not otherwise objectionable.

In the same vein, Bard also seeks to exclude Dr. Allen's opinion that Bard "failed to notify" treating physicians and patients of "the much higher complication rates of fracture, embolization of fractured components, caval perforation, filter migration, and death associated with the G2 and Recovery filters in comparison to the original predicate device . . . and competitor filters." (Doc. No. 63 at 9–10). As part of his testimony about what a reasonable physician would expect or want to know, discussed in detail below, the Court finds that Dr. Allen can testify that a reasonable physician would want to know if the G2 device had more known risks than other comparable filters. As previously stated, he can then testify as to *whether* those risks appeared in the IFU. Such an opinion is admissible under Rule 702 because it falls within the area of Dr. Allen's expertise, and is based on his years of experience as a physician.

While Dr. Allen can testify about the specific risks and whether those risks appeared on the IFU, he "must possess additional expertise to offer expert testimony about what information should or should not be included in an IFU." *In re: Ethicon Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, No. MDL 2327, 2016 WL 4556807, at *4 (S.D.W. Va. Aug. 31, 2016). Consequently, Dr. Allen cannot testify that Bard did not "adequately warn physicians . . . of important safety risks and specific device failure risks associated with its 'retrievable' G2 IVC filter." (Doc. No. 63 at 9–10).

5

## 2. Reasonable Expectations

Dr. Allen can testify as to what a physician reasonably expects to be told about the risk of IVC filters. As the Ninth Circuit has noted, "despite the importance of evidence-based medicine, much of medical decision-making relies on judgment—a process that is difficult to quantify or even to assess qualitatively. A doctor's experience might be good reason to admit his testimony." *Primiano v. Cook*, 598 F.3d 558 at 565–66 (9th Cir. 2010) (cleaned up) (citing *Dickenson v. Cardiac & Thoracic Surgery of E. Tenn.*, 388 F.3d 976, 982 (6th Cir. 2004); *Schneider v. Fried*, 320 F.3d 396, 406–07 (3d Cir. 2003)). The Court finds that Dr. Allen's knowledge and experience in the field of interventional radiology and his use of IVC filters in patients form a sufficient foundation for voicing an opinion concerning what a doctor reasonably expects to be told by the manufacturer about the risk of IVC filters. *See In re Bard IVC Filters Products Liab. Litig.*, MDL 15-02641-PHX DGC, 2017 WL 6554163, at *4 (D. Ariz. Dec. 22, 2017) (concluding doctors should be permitted to testify about disclosures that reasonable radiologists expect to receive from manufactures of IVC filters after thorough case law analysis); *see also In re Bard IVC Filters Prods. Liab. Litig.*, 2018 U.S. Dist. LEXIS 9682, at *301 ("As an experienced interventional radiologist with years of practice, Dr. Hurst clearly is qualified to opine about the information physicians and patients need and expect when making decisions about the use of IVC filters."). Such testimony appears to be well within Dr. Allen's expertise and experience, and the Court can identify no basis under Rule 702 for precluding it.

By contrast, Dr. Allen cannot testify as to whether the IFU "failed to meet the reasonable expectations of physicians like Dr. Gunlock, who implant or recommend implantation of IVC filters." (Doc. No. 63 at 9). Initially, Dr. Allen can only testify generally as to what a reasonable person practicing in the field of interventional radiology would expect. He may not testify as to

6

what Dr. Gunlock would expect. Dr. Gunlock may, of course, testify as to his own experience, if designated as an expert witness himself. For the same reason, Dr. Allen cannot testify as to whether Bard's alleged failure to warn of "safety risks and problems associated with the G2 filter . . . prevented Dr. Gunlock from making an informed decision as to whether to implant a G2 filter into [Plaintiff], and also prevented him from explaining the risks to [Plaintiff], and in turn prevented [Plaintiff] from providing Dr. Gunlock informed consent." (Doc. No. 63 at 9–10). Again, Dr. Allen may not testify on behalf of Dr. Gunlock and may only testify in terms of the opinions and expectations of a reasonable physician. *See In re Bard IVC Filters*, 2018 U.S. Dist. LEXIS 9682, at *301; *see also In re Bard IVC Filters*, 2017 WL 6554163, at *4.

### 3. Adequacy

Dr. Allen is not qualified to testify about the adequacy of the warnings on the IFU or what should or should not be included in those warnings.[1] Dr. Allen has no expertise or experience related to the requirements for or the drafting of IFUs or warnings. (Doc. No. 63-6 at 203:22–24). Dr. Allen does not claim to have been involved in writing or preparing a warning for any medical device. (*Id.* at 203:16–21). Moreover, he does not present additional qualifications to testify as to the adequacy of the warnings on the IFUs. (Doc. No. 63 at 13). Therefore, the Court hereby excludes Dr. Allen's opinions and testimony concerning the adequacy of the warnings in the IFU

---

[1] As previously stated, Dr. Allen is permitted to testify about whether perceived risks are in fact warned about, but he may not opine as to the adequacy of the warning based upon the risks described or omitted. Judge Goodwin aptly described this distinction in an MDL opinion:

> Based on his experience, I find him qualified to testify about whether the risks he perceives are in fact warned about in the IFU. Dr. Hoyte's opinion testimony on the IFU must stop here, however. A doctor who has no background in the requirements of an IFU is not qualified to opine that it "adequately and appropriate" warns of the risk merely because he personally knows about or has observed risks in his practice.

*In re C. R. Bard, Inc., Pelvic Repair Sys. Products Liab. Litig.*, MDL 2187, 2018 WL 4220618, at *5 (S.D.W. Va. Sept. 5, 2018).

and what should or should not have been included. *See Dorgan v. Ethicon, Inc.*, 4:20-00529-CV-RK, 2020 WL 5367063, at *2 (W.D. Mo. Sept. 8, 2020) (finding expert with similar qualifications unqualified to testify about adequacy of warning); *see also In re C. R. Bard, Inc.*, WL 4220618, at *5 (holding that mere personal knowledge or observation of risks by doctor does not qualify him to opine that IFU adequately and appropriately warned of risks, without a background in the requirements of an IFU).

B. The Efficacy of the Filter

Bard argues that Dr. Allen should not be permitted to opine that there is "no proven efficacy of any IVC filter including the G2 in reducing the risk of mortality," or that "the G2 is a filter with great risk but no proven benefit." (Doc. No. 63 at 18). Bard urges both that Dr. Allen is not qualified to opine as to the efficacy of IVC Filters, and that he impermissibly restates Dr. Garcia's general expert opinion. (*Id.*). Conn contends that Dr. Allen is qualified to testify based upon "decades of experience in placing and retrieving IVC filters," and his opinion does not regurgitate that of Dr. Garcia but rather is based upon his review of the "pertinent medical literature and Bard's internal documents." (Doc. No. 94 at 19).

The Court finds that based upon his training and experience, Dr. Allen is qualified to testify as to the efficacy of IVC filters, including the G2 filter. In addition to his pedigree, there is uncontroverted deposition testimony that he has "implanted a large number of them over the years." (Doc. No. 63-6 at 208: 17–18). As the Supreme Court has explained, "the relevant reliability concerns may focus upon personal knowledge or experience. *Daubert* makes clear that the factors it mentions do *not* constitute a definitive checklist or test." *Kumho Tire*, 526 U.S. at 150. Dr. Allen is qualified to offer his expert opinion as to what an IVC filter is intended to do. Given his clinical experience as an interventional radiologist who has implanted and continues to

8

explant IVC filters, insofar as that experience is relevant, he can opine as to whether he thinks the IVC filters are effective in achieving their intended function. He can also, given his area of expertise, opine as to whether he thinks the Filter poses risks or presents benefits, so long as his opinion is based upon his own training, education, and experiences.

Moreover, the Court finds that Dr. Allen's opinions about the efficacy of IVC filters, including the G2 filter, are not merely a restatement of Dr. Garcia's opinions but are instead based upon his aforementioned clinical experience, his "literature search, review of the literature," and his review of "Bard's internal documents." (Doc. No. 117-38 at 17–19) (*see also* Doc. No. 63-6 at 208:18–25). While the Court hereby holds that Dr. Allen may not parrot, either literally or metaphorically, the opinions of Dr. Garcia, *In re Bard IVC Filters Prods. Liab. Litig.*, 2018 U.S. Dist. LEXIS 9682, at *302, he may certainly rely upon those opinions to inform his own. *In re Bard IVC Filters Products Liab. Litig.*, 2017 WL 6554163, at *2. In this instance, Dr. Allen has sufficiently established that his own opinion about the efficacy of IVC filters is based upon both his own clinical experience and his literature review. (Doc. No. 194-5 at 34). Insofar as his opinions about the efficacy of IVC filters are based upon his education, training, personal experience and his literature review, he may also testify that it is his opinion that there is "no proven efficacy of any IVC filter including the G2 in reducing the risk of mortality," and that "the G2 is a filter with great risk but no proven benefit." (Doc. No. 63 at 18).

C. <u>Design Defect or Defective Design</u>

Dr. Allen seeks to offer several opinions regarding the Filter's design. Bard seeks to exclude his opinions as to "design defects," including that the "defective design of the G2 filter caused [Plaintiff]'s injuries, including tilt and apex embedment, multiple strut fractures, fragment embolization to the patient's heart, caval perforation into the retroperitoneum, liver, uncinate

process of pancreas and direct impingement on the crossing right renal artery" and that the "strut perforations and fractures associated with [Plaintiff]'s G2 filter were and are the result of the filter design itself." (Doc. No. 63 at 9–10). Bard argues that Dr. Allen lacks the qualifications to opine on the design of the Filter, and that such an opinion is an impermissible legal conclusion. (*Id.* at 16–21).

Under Rule 702, an expert's testimony must be limited to the bounds of his or her qualifications. *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999). Dr. Allen is not an engineer of any kind. (Doc. No. 63-5 at 2). He has never successfully designed or made a medical device to be implanted in a human. He is not a metallurgist or any other kind of specialist in designing, selecting, or crafting materials to be used in human implantation. (*Id.*). He has never consulted with a medical device manufacturing company on product development. (Doc. No. 63-6 at 21:19-22:6). As a result, Dr. Allen lacks the specialized knowledge, skill, experience, and training to opine as to whether the filter suffers from a "defective design" or has a "design defect." (Doc. No. 117-38 at 27).[2] Since Dr. Allen is not qualified to opine as to a design defect, he similarly cannot opine that any "design defect" or "defective design" caused the Filter to do anything or caused any of Conn's injuries. Therefore, he cannot offer the opinions that the "*defective design* of the G2 filter caused [Plaintiff]'s injuries, including tilt and apex embedment, multiple strut fractures, fragment embolization to the patient's heart, caval perforation into the retroperitoneum, liver, uncinate process of pancreas and direct impingement on the crossing right renal artery," or that the "strut perforations and fractures associated with [Plaintiff]'s G2 filter were and *are the result of the filter design itself.*" (Doc. No. 63 at 9–10) (emphasis added).

---

[2] Conn apparently interprets Dr. Allen's report as not offering any opinions on design: "[Dr. Allen] has not and will not offer any opinion regarding any design issues with the G2 filter." (Doc. No. 94 at 16). Regardless of how Conn perceives Dr. Allen's expert report, the Court now makes clear that Dr. Allen cannot offer any opinions on the design defect or defective design of the Filter.

Although Dr. Allen is not qualified to testify that the filter's alleged failure was caused by the filter's alleged design defect, he is qualified to testify about the resulting problems or consequences from the filter's fragmentation (or failure) in Conn, because he has reviewed Conn's medical records. In other words, he can offer the opinion *that* the filter failed but not the reason, and that there were subsequent strut fractures, fragment embolization, impingements, and perforations.[3]

D. <u>Specific Causation</u>

While Dr. Allen cannot opine as to any design defect or defective design, there is a separate question of whether he can offer his opinion as to specific causation. Apparently, Dr. Allen intends to offer testimony that the "defective design of the G2 filter caused [Plaintiff]'s injuries, including tilt and apex embedment, multiple strut fractures, fragment embolization to the patient's heart, caval perforation into the retroperitoneum, liver, uncinate process of pancreas and direct impingement on the crossing right renal artery." (Doc. No. 117-38 at 27).[4] He continues that "the strut perforations and fractures associated with [Plaintiff's] G2 filter were and are the result of the filter design itself." (*Id.*). As a result of these alleged failures, Dr. Allen opines that Plaintiff "reported intermittent episodes of chest pain and tightness that may well have been related to his filter or the fractured and/or embolized components thereof." (*Id.* at 26).

According to his expert report, Dr. Allen relied on his "training, education, and experience, [ ] reviewed the medical records and imaging and the documents cited in [his] report, the other documents [he] mentioned in reliance, and the expert reports of Dr. McMeeking" for the specific

---

[3] Dr. Allen cannot testify as to any design defect. If, however, other reliable expert testimony is admitted at trial that offers the opinion that there was a design defect, in response to hypothetical questions Dr. Allen may rely upon that expert opinion in his own testimony.

[4] The reference to plaintiff's injuries is quite non-specific. The Court is still not clear as to the "injuries" to which either Dr. Allen is referring to specifically or the Plaintiff is claiming generally.

11

causation opinion. (Doc. No. 117-38 at 27). Bard argues that he should not be permitted to testify as to specific causation because he cannot rely on Dr. McMeeking's findings, and his differential diagnosis is unreliable. (Doc. No. 63 at 19–21).

Initially, the Court finds that Rule 703 permits Dr. Allen to rely upon other expert's opinions, including Dr. McMeeking's, to form his own opinion, assuming the underlying data or opinion is reliable. *State Auto. Mut. Ins. Co. v. Freehold Mgmt.*, Civil Action No. 3:16-CV-2255-L, 2019 U.S. Dist. LEXIS 55052, at *27 (N.D. Tex. 2019); *see also First National Bank of Louisville v. Lustig*, 96 F.3d 1554, 1576 (5th Cir. 1996). Therefore, while Dr. Allen cannot testify as to any specific design defect, he may rely on the admissible testimony of other experts who are competent to testify that a design defect does exist.

Most of Dr. Allen's specific causation opinion hinges on his "failure analysis, by way of differential diagnosis." (Doc. No. 117-38 at 27). A differential diagnosis is "a scientific technique that essentially involves the process of elimination." *Sims v. Kia Motors of Am., Inc.*, 839 F.3d 393, 401 (5th Cir. 2016). Although this methodology may be "reliable under *Daubert* when used by medical experts," the "results of a differential diagnosis are far from reliable *per se*." *Id.* "A reliable differential diagnosis . . . generally is accomplished by determining the possible causes for the patient's symptoms and then eliminating each of those potential causes until reaching one that cannot be ruled out or determining which of those that cannot be excluded is the most likely." *Johnson v. Arkema, Inc.*, 685 F.3d 452 at 468 (5th Cir. 2012). An "expert's causation opinions will not be excluded because he or she has failed to rule out every possible alternative cause of a plaintiff's illness." *Chrastecky v. C. R. Bard, Inc.*, 2020 U.S. Dist. LEXIS 25837, 2020 WL 748182, at *6 (W.D. Tex. Feb. 14, 2020). "[O]ther possible alternative causes affect the

weight—not the admissibility—of an expert's testimony, unless the expert can provide *no* explanation for ruling out such alternative causes at trial." *Id.*

Dr. Allen states that his differential diagnosis considered "the implantation technique and its result, the patients' anatomy, size of the vena cava, external forces, external stresses, his medical history including medical procedures performed between implant and removal, and the design of the G2 filter itself as outlined by Dr. McMeeking as reasonable possible causes of the failures, including tilt, embedment, perforation, fractures, and fragment embolization." (Doc. No. 117-38 at 27). He continues that he reviewed Conn's records and Dr. Gunlock's testimony, and from this information "was able to eliminate the listed causes other than design of the product and found no other reasonable cause." (*Id.*).

Initially the Court notes Dr. Allen may not testify as to the cause of the strut perforations and fractures associated with Conn's G2 filter. He is not qualified to opine in this area. He has not given any basis for such testimony nor has he articulated any reliable principle or method upon which he relied. To the extent he relies upon a differential diagnosis approach (otherwise known as a process of elimination), he may opine as to whether he could identify any medical or anatomical condition caused the fractures, but that is the boundary limit of his expertise.

With regard to Conn's alleged injuries, the analysis in Dr. Allen's report fails to establish any valid scientific methodology for how he ruled out other causes of Conn's pain. *Wooley v. Smith & Nephew Richards, Inc.*, 67 F. Supp. 2d 703, 709 (S.D. Tex. 1999) (dismissing a differential diagnosis based only on an expert's review of medical records as a "meek attempt" to prove a comprehensive differential diagnosis). He has not provided an explanation for how he ruled out other potential causes to arrive at his conclusions that the Filter allegedly failed because of its design or how the Filter's alleged failure caused Conn's pain. *See Guillory v. Domtar Indus., Inc.*,

95 F.3d 1320, 1331 (5th Cir. 1996) (excluding expert opinion based on mere speculation). Dr. Allen's analysis glaringly offers no scientifically reliable explanation whatsoever for how he excluded Plaintiff's numerous comorbidities, including chronic Crohn's disease and related complications, as alternate causes of Conn's injuries.

The admission of Dr. Allen's opinion is also refuted by his deposition testimony and unsupported by facts. When asked if any of Conn's symptoms could be attributed to the filter, Dr. Allen testified: "I'm saying that the filter certainly could have contributed to some of his symptomatology, and there's no way of knowing whether it did or didn't." (*Id.* at 170:2–5). Dr. Allen's deposition testimony contradicts any attempt to link the Filter and its alleged failings to Conn's abdominal and chest pain symptoms. (Doc. No. 63-3 at 168:14–16). There is no way he can testify to any specific pain or "symptomatology" to any degree of reasonable medical probability. The Court determines that Dr. Allen's specific causation opinions are therefore speculative and unsupported, and they warrant exclusion. *See Guillory*, 95 F.3d at 1331.

E. Opinions Excluded in the MDL

As previously stated, Dr. Allen may rely upon other experts' opinions to form his own opinion, assuming the underlying data or opinion is reliable. *State Auto. Mut. Ins. Co. v. Freehold Mgmt.*, Civil Action No. 3:16-CV-2255-L, 2019 U.S. Dist. LEXIS 55052, at *27 (N.D. Tex. 2019); *see also First National Bank of Louisville v. Lustig*, 96 F.3d 1554, 1576 (5th Cir. 1996). It follows, then, that Dr. Allen cannot rely upon other expert testimony or opinions that have already been excluded under *Daubert*. Insofar as the opinions Dr. Allen intends to offer are based upon other expert opinions that have already been specifically excluded in the MDL as being unsupportable and inadmissible, the Court hereby excludes that testimony. The Court also reiterates that Dr. Allen may not parrot opinions of other experts. This is especially true if he is

parroting impermissible hearsay evidence or opinion evidence that has been excluded. *Cooper v. Meritor, Inc.*, 4:16-CV-52-DMB-JMV, 2019 WL 545271, at *3 (N.D. Miss. Feb. 11, 2019) ("An expert may not parrot another expert's opinion when the subject relates to an issue in the case"); *Eveler v. Ford Motor Co.*, CV 16-14776, 2017 WL 3382460, at *9 (E.D. La. Aug. 7, 2017) ("Unblinking reliance on another expert's testing also renders [the expert's] methodology unreliable.").

F. <u>Medical Device Complaints and Underreporting</u>

Finally, Bard seeks to exclude Dr. Allen's opinions pertaining to "medical device complaints and underreporting." (Doc. No. 63 at 9–10). Bard does not support its request with any argument, and Conn did not respond. The Court hereby excludes Dr. Allen's testimony pertaining to "medical device complaints and underreporting" because he is not qualified to offer such an opinion. An expert's testimony must be limited to the bounds of his or her qualifications. *Wilson*, 163 F.3d at 937. Dr. Allen is not an FDA expert, nor is he being offered as one. (Doc. No. 94 at 10) ("Dr. Allen does not purport to be and is not offered as a regulatory expert."). Similarly, he does not have special training or knowledge of the FDA reporting requirements. (Doc. No. 117-38 at 2). He is also not an expert in the MAUDE database and has never collected data or conducted a study on reporting rates of medical devices. While he has reviewed two materials (*see* Doc. No. 117-38 at 21) on medical device underreporting, he does not purport to have taken any steps to verify their conclusions, and merely restating those conclusions does not constitute a reliable basis for rendering an expert opinion under Rule 702. *See In re Bard IVC Filters Prods. Liab. Litig.*, 2018 U.S. Dist. LEXIS 9682, at *302 (citing *In re Matter of Complaint of Ingram Barge Co.*, 2016 U.S. Dist. LEXIS 107984, 2016 WL 4366509, at *4 (N.D. Ill. Aug. 16, 2016)). These opinions are, therefore, excluded.

### IV. Conclusion

For the foregoing, the Court grants in part and denies in part Bard's Motion to Exclude or Limit Opinions and Testimony of Robert P. Allen, M.D. (Doc. No. 63).

Signed at Houston, Texas, this __8th__ day of June 2021.

Andrew S. Hanen
United States District Judge