IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHARLES CONN, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:14-CV-298 |
| | § | |
| C.R. BARD, INC, *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Pending before the Court is a Motion to Strike Plaintiff's New Post-MDL General Opinions of Plaintiff's Expert David Garcia, M.D. Relating to Clot Formation, filed by Defendant C.R. Bard, Inc. and Bard Peripheral Vascular, Inc. ("Bard") (Doc. No. 49). Plaintiff Conn ("Conn") responded (Doc. No. 68), and Bard replied. (Doc. No. 98). After considering the motion, response, record, and applicable law, the Court GRANTS the motion.

**I. Background**

This is a products liability action involving the G2 Filter (the "Filter"), a medical device manufactured and distributed by Bard. Conn was implanted with the Filter on August 24, 2006 and claims it "fractured and a strut migrated to the right ventricle causing [ ] significant injuries." (Doc. No. 1 at 23–24). Conn sued Bard alleging negligence, failure to warn, design defects, manufacturing defect, breach of implied warranty of merchantability, negligent representation, and loss of consortium on behalf of Plaintiff Alyssa Conn, his wife. He also sought punitive damages.

This case was part of the coordinated multi-district pretrial proceedings in *In re: Bard IVC Filters Products Liability Litigation*, MDL 2641, in the District of Arizona. General expert discovery was conducted in the MDL, which included the designation of Dr. David Garcia, a

hematologist and expert in the diagnosis, treatment, and prevention of venous thromboembolism (VTE). He was designated to offer opinions regarding the risks and benefits of IVC Filters in the treatment and prevention of VTE. (*See generally* Doc. No. 68-2 at 3) (hereinafter, "Original Expert Report"). General expert discovery closed on July 14, 2017, and the MDL Court concluded that "transferor courts [such as this Court] need not be concerned with facilitating general expert, corporate, and third-party discovery on remand or transfer." (Doc. No. 23-3 at 12, 31) (hereinafter, "Transfer Order").

On August 21, 2020, Conn served his Designation of Experts and Opinion Testimony in the instant case and identified Dr. Garcia as one of his "general liability experts disclosed previously in other litigation." (Doc. No. 49-1 at 71–73). Along with his Expert Disclosure, Conn served, for the first time, a new expert report from Dr. Garcia (hereinafter, "New Report"), dated June 30, 2020.

Bard asks the Court to strike the New Report for several reasons: (1) it was not properly and timely disclosed in the MDL; (2) it is not a supplemental opinion properly based on any previously disclosed opinions; (3) its untimely submission is prejudicial and harmful to Bard; and (4) it is not relevant to this case. (Doc. No. 49 at 2). Conn responded (Doc. No. 68) and Bard replied (Doc. No. 98).

## II. Legal Standard

Federal Rule of Procedure 26(e)(1)(A) contemplates situations when a party may supplement a disclosure required by Rule 26(a) "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). The purpose of supplementary

2

disclosures under Rule 26(e)(2), which pertains to expert witnesses in particular, is to prevent prejudice or surprise, not provide an extension of the expert designation and report production deadline. *Diaz v. Co-Way Truckload Inc.*, 279 F.R.D. 412, 421 (S.D. Tex. 2012) (collecting cases). Accordingly, courts distinguish "true supplementation (*e.g.*, correcting inadvertent errors or omissions) from gamesmanship, and have therefore repeatedly rejected attempts to avert summary judgment by supplementing an expert report with new and improved expert report." *Cutler v. Louisville Ladder, Inc.*, CIV. 4:10-4684, 2012 WL 2994271, at *5 n.43 (S.D. Tex. July 20, 2012). Permissible supplementation of an expert report occurs in limited circumstances when the party or expert learns that information previously disclosed is incomplete or incorrect in some material respect; in other words, if the expert report does not rely upon information previously unknown or unavailable to him before, it is not an appropriate supplemental report. *Diaz*, 279 F.R.D. at 421.

Federal Rule of Civil Procedure 37(c)(1) provides: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also EEOC v. Serv. Temps Inc.*, 679 F.3d 323, 329 n.2 (5th Cir. 2012); *TracBeam LLC v. Google, Inc.*, 2014 U.S. Dist. LEXIS 193246, at *3 (E.D. Tex. Apr. 14, 2014). "In determining whether a violation of Rule 26(a) or (e)(1) is harmless, the trial court's discretion is to be guided by the consideration of four factors: (1) the importance of the witness's testimony; (2) the prejudice to the opposing party of allowing the witness to testify; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation, if any, for the party's failure to identify the witness." *United States v. $9,041,598.68*, 163 F.3d 238, 252 (5th Cir. 1998).

3

## III. Analysis

In Dr. Garcia's New Report, he opines that "an IVC filter can, and in some cases does, cause clinically important thrombosis on and around the device itself." (Doc. No. 49-1 at 86–88). Bard argues that the New Report impermissibly offers new general opinions three and a half years after expert discovery closed. Bard also argues that the New Report cannot be characterized as a supplementation to his Original Expert Report because it is not based on any information previously unknown or unavailable to Dr. Garcia at the time of his Original Expert Report, nor does it attempt correct inaccuracies from that report.

Conn argues that the New Report is a "supplemental report" that "simply reiterated the opinions [Dr. Garcia] had already discussed in 2017 . . . and identified additional supporting evidence." (Doc. No. 69 at 5). He contends that Dr. Garcia timely disclosed those opinions, which the New Report merely reiterates, in his Original Expert Report when he opined that "there is high-quality evidence that . . . IVC filters increase the risk of venous thrombosis (especially vena caval thrombosis and lower extremity DVT)." (Doc. No. 68 at 4; Doc. No. 49-1 at 13). Conn further argues that under the Rule 37(c)(1) standard, he was substantially justified in serving the New Report at this belated date because Conn was not allowed to participate directly in the general discovery period in the MDL. Similarly, he argues that any alleged deficiency in Dr. Garcia's disclosures is harmless because the New Report originated in June of 2020, giving Bard ample time to depose Dr. Garcia.

The Court finds that the New Report cannot be characterized as a supplemental report as per Rule 26(e)(1)(A) and must therefore be stricken. Rule 26(e)(1)(A) allows for supplementation when (1) the party learns in some material respect that prior disclosure was incomplete or incorrect *and*; (2) the additional or corrective information has not otherwise been made available to the other

4

party during the discovery process or in writing. *See* Fed. R. Civ. P. 26(e)(1)(A). Neither of these requirements appears to be met. The New Report contains a background discussion of the physiology of hemostasis and coagulation, an analysis of a Bard internal document related to migration incidences—a document previously produced in the MDL—an analysis of an animal study performed by Bard, and a review of medical articles published before the Original Expert Report. (Doc. No. 49-1 at 86–88). None of this information reflects an attempted correction of an "incomplete or incorrect" disclosure, nor has Conn given the Court any reason to conclude that the New Report is a supplementation to the Original Expert Report. In fact, Conn makes the opposite assertion, namely that the opinions and data in the New Report "simply reiterated the opinions" already disclosed in 2017 and provided "additional supporting evidence." (Doc. No. 68 at 5). Supplemental reports, however, should go beyond the expert "proving up" the opinions contained in that report. *Sobrino-Barrera v. Anderson Shipping Co., Ltd.*, 495 Fed. Appx. 430, 433 (5th Cir. 2012).

Moreover, most of the materials upon which Dr. Garcia's New Report relies were available to him at the time of his Original Expert Report, including Bard's documents and the medical literature. (Doc. No. 98 at 11–13). *See Diaz*, 279 F.R.D. at 421 (reviewing case law holding that a proper supplemental report should rely on previously unknown or unavailable information); *see also Accident Ins. Co. v. Classic Bldg. Design, LLC*, No. 2:11CV33KS-MTP, 2012 WL 3913090, at *7 (S.D. Miss. Sept. 7, 2012), *aff'd sub nom. Accident Ins. Co. v. Classic Bldg. Design, L.L.C.*, 539 F. App'x 465 (5th Cir. 2013) (Rule 26 does not condone unlimited bolstering of expert opinions or "cover failures of omission because the expert did an inadequate or incomplete preparation."). While Dr. Garcia's New Report relied in part on Bard's internal animal studies that were offered into evidence during the 2018 bellwether trials, Conn has not made any effort to

explain why he waited at least two years from then to at least supplement his reliance list. (Doc. No. 98 at 13).

Having established that the New Report cannot be admitted under Rule 26(e)(1) as a supplemental report, the Court turns now to Rule 37, which requires the exclusion of such expert testimony only if the failure to disclose information is not substantially justified and such failure is not harmless. Fed. R. Civ. P. 37(c)(1). Here, Conn has provided little justification for the delay. He has indicated only that the nature of the MDL precluded him and his counsel from participating "directly" in the general expert discovery. While this may be true, as stated before, the MDL Court concluded that general expert discovery closed on July 14, 2017, and the "transferor courts need not be concerned with facilitating general expert, corporate, and third-party discovery on remand or transfer." (Doc. No. 23-3 at 12, 31). If parties were not bound by this order, it would defeat the entire purpose behind the creation of MLDs. This is especially true when one considers that the materials used in Dr. Garcia's New Report were available before the close of expert discovery in the MDL, and Conn has offered no substantiated justification for his failure to timely disclose. Further, he could have named Dr. Garcia as a case-specific expert, but Conn chose not to do that.

Moreover, Conn's untimely disclosure is not harmless to Bard. Bard relied upon the fact that general expert discovery was completed in 2017, three years before the New Report was authored, when it selected its own general experts and offered their opinions. (Doc. No. 49 at 17). *See e.g., Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990) (finding two-week delay in designating expert witness was not harmless because it would disrupt discovery schedule and opponent preparation); *Metro Ford Truck Sales, Inc.*, 1145 F.3d 320, 324 (5th Cir. 1998) (holding noncompliant expert report "supplement" was not harmless). Allowing Conn to submit new "general" expert opinions years after general discovery ended in an MDL in lieu of naming the

expert as case specific also defeats the purpose of the MDL's centralized approach to general expert work-up for these cases. (*Id.* at 18).

The Court, however, agrees with Conn that many of Dr. Garcia's opinions about clot formation were timely and properly disclosed during general discovery in his Original Expert Report. Dr. Garcia's opinion that there is "high-quality evidence that, in some instances, IVC filters increase the risk of venous thrombosis (especially vena caval thrombosis and lower extremity DVT)," is a broad statement that arguably encompasses many of his opinions offered in the New Report. (Doc. No. 49-1 at 13). Further, at several points during Dr. Garcia's deposition, which included questions based upon his Original Expert Report, he expounds on this opinion. For example, he explained the mechanism by which the presence of a foreign body can induce thrombosis:

> [A] variety of foreign objects . . . when they're exposed to circulating blood, they activate factor XII, which is one of the clotting proteins that are involved in the so-called contact activation . . . and that triggers a chain . . . that ultimately can lead to the formation of a blood clot. And it's entirely stimulated by contact with foreign surfaces. And I have no reason to think that a filter fragment would be an exception to a rule that's certainly followed by many other foreign bodies.

(Doc. No. 68-3 at 237: 4–14). Clearly, at the time of his Original Expert Report, Dr. Garcia opined that a foreign object, like an IVC filter, could be a source of an increased risk of blood clot formation.

Therefore, while Conn cannot introduce Dr. Garcia's New Report or the testimony regarding new topics and reasons raised therein, Conn can certainly call Dr. Garcia to testify about topics raised in his Original Expert Report and the opinions expressed therein.

## IV. Conclusion

For the foregoing, the Court **GRANTS** Bard's Motion to Strike (Doc. No. 49).

Signed at Houston, Texas, this 8th day of June 2021.

_____
Andrew S. Hanen
United States District Judge